# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

### AIKEN DIVISION

| | | |
|---|---|---|
| ROBERT WESTMORELAND, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:05-3475-MBS-BM |
| v. | ) | |
| | ) | |
| AB BEVERAGE COMPANY, INC., | ) | **REPORT AND RECOMMENDATION** |
| CATHY VARNADORE, AND | ) | |
| JOSEPH POND,[1] | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This action was originally filed by the Plaintiff in the South Carolina Court of Commons Pleas, Second Judicial Circuit, on November 17, 2005. The case was subsequently removed to this Court by the Defendants on December 13, 2005 on the basis of both federal question and diversity jurisdiction. 28 U.S.C. § 1331 and 1332. Following completion of discovery, the Defendants filed a motion for summary judgment on September 11, 2006 pursuant to Rule 56, Fed.R.Civ.P.. After receiving an extension of time, Plaintiff filed a memorandum in opposition to the Defendants' motion on October 16, 2006, following which Defendants filed a reply memorandum on October 24, 2006. Defendants' motion is now before the Court for disposition.[2]

---

[1]The Defendant Pond passed away in 2006, and Plaintiff states in his memorandum opposing summary judgment he is therefore dismissing any claims against Mr. Pond in his individual capacity. See Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, p. 4, n. 2.

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

1



### Background and Evidence[3]

Plaintiff was hired by the corporate Defendant in 1984 to be the Sales Administrator/Administrative Director for the Defendant's facility in Aiken, South Carolina. Plaintiff's Deposition, pp. 10-12; Pond Deposition, pp. 9, 40. Plaintiff held this position for approximately twenty (20) years, receiving good evaluations and regular pay raises and bonuses during that period of time. Plaintiff never received a warning or disciplinary action prior to February 2004. Pond Deposition, pp. 10-12; Stillinger Deposition, pp. 27-28.

Joe Pond was President and majority owner of the corporate Defendant. At the time Plaintiff was hired, Joe Stout was the Branch Manager for the Aiken facility, a position he held until his retirement in 2003. Stout was replaced at that time by Bo Stillinger. Cathy Varnadore, the corporate Defendant's Vice President, is Pond's daughter. Her husband, Doug Varnadore, was the Sales & Marketing Coordinator at the corporate Defendant's Augusta, Georgia facility. Plaintiff's Deposition, pp. 11-12, 15; Pond Deposition, pp. 6, 18, 40; Stillinger Deposition, pp. 7, 16-18; Cathy Varnadore Deposition, p. 101; Doug Varnadore Deposition, pp. 4-5.

Doug Varnadore's brother, Chris Varnadore, worked with the Plaintiff at the Aiken facility. Pond Deposition, p. 26; Chris Varnadore Deposition, pp. 4-5; Cathy Varnadore Deposition, p. 51. Chris Varnadore had recommended a contractor to Cathy and Doug Varnadore to build their home, and when this project did not go smoothly, Cathy and Chris had what could be described as

---

[3]The facts and evidence are considered and discussed hereinabove in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).



a "falling out". <u>Plaintiff's Deposition</u>, pp. 59-60; <u>Cathy Varnadore Deposition</u>, pp. 20-21; <u>Pond Deposition</u>, pp. 27-28. On February 11, 2004, following a semi-annual sales meeting for the Aiken employees, Plaintiff and Cathy Varnadore had a contentious conversation wherein Plaintiff testified that Cathy Varnadore demanded that he side with her in her disagreement with Chris. Plaintiff testified that, when he refused to take anyone's side, Cathy became irate and began hitting him across the head with her hands. <u>Plaintiff's Deposition</u>, pp. 27-29. Plaintiff testified that Cathy was "out of control" and that he had to push her off of him. <u>Id</u>. Cathy Varnadore denies Plaintiff's version of the event, stating that she only grabbed Plaintiff's arm when he began to walk away so that they could continue their discussion. <u>Cathy Varnadore Deposition</u>, pp. 29-31. Cathy Varnadore testified that she subsequently had to break free from the Plaintiff, who was holding her by the shoulder. <u>Cathy Varnadore Deposition</u>, pp. 33-34. Neither party suffered any physical injuries or sought medical attention as a result of this incident. <u>Plaintiff's Deposition</u>, p. 48; <u>Cathy Varnadore Deposition</u>, pp. 30, 35.

A few weeks after this altercation, Pond came to the Aiken facility and told Plaintiff that he was old enough to retire and could either retire or be fired. <u>Plaintiff's Deposition</u>, pp. 17, 45-46, 53-54; <u>Stillinger Deposition</u>, pp. 85-89; <u>Pond Deposition</u>, pp. 32-34. Pond also told the Plaintiff that he was old enough to apply for and collect Social Security, and that he should do so. <u>Plaintiff's Deposition</u>, pp. 45-46; <u>Pond Deposition</u>, pp. 31-34. Pond told Plaintiff to submit a severance proposal. <u>Plaintiff's Deposition</u>, pp. 53-54; <u>Pond Deposition</u>, pp. 35-36. Plaintiff did submit a proposal, but the two sides could not reach any agreement. <u>Plaintiff's Deposition</u>, pp. 56-57; <u>see also</u> <u>Pond Deposition, Exhibit 3</u>. Although Pond had initially told Plaintiff that he could work through June, he was terminated on May 5, 2004. <u>Stillinger Deposition</u>, pp. 91-92; <u>Pond Deposition</u>, p. 38.



The individual hired to replace the Plaintiff was approximately forty (40) years younger than Plaintiff. Pond Deposition, pp. 38, 42.

Plaintiff filed a charge of discrimination with the South Carolina Human Affairs Commission (SCHAC) alleging age discrimination, and after receiving a right to sue letter filed this lawsuit. In his Complaint, Plaintiff asserts claims for age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et. seq. (first cause of action), breach of contract (second cause of action), breach of contract accompanied by a fraudulent act (third cause of action), intentional infliction of emotional distress (fourth cause of action), battery (fifth cause of action), assault (sixth cause of action), wrongful discharge (seventh cause of action)[4], and negligent supervision (eighth cause of action).[5]

## Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.

---

[4]This cause of action is incorrectly numbered in the Complaint as being Plaintiff's eighth cause of action.

[5]This cause of action is incorrectly numbered in the Complaint as being Plaintiff's ninth cause of action.

4



# I.

## (ADEA Claim)

Plaintiff alleges in his first cause of action that "Pond terminated [him] after previously requesting Plaintiff to retire due to Plaintiff's age", and that by "terminating Plaintiff's employment because of his age, [the corporate Defendant] intentionally discriminated against Plaintiff in violation" of the ADEA. This cause of action is asserted against the corporate Defendant only.

Disparate treatment cases under the ADEA require proof of intentional discrimination, traditionally either by direct evidence or by the structured procedures set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see also Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981). Consideration of Plaintiff's claim under the so-called "mixed-motive" analysis is also now allowed even though Plaintiff has presented only circumstantial, or indirect, evidence of discrimination. Desert Palace, Inc. v. Costa, 539 U.S. 90, 93-102 (2003); Hill v. Lockheed Martin Logistics Mgt., Inc., 354 F.3d 277, 284-285 (4th Cir. 2004); see also Mereish v. Walker, 359 F.3d 330, 339-340 (4th Cir. 2004); Machinchick v. PB Power, Inc., 398 F.3d 345, 352 (5th Cir. 2005) [ADEA]. Previously, consideration of a claim under the mixed- motive analysis was only proper in direct evidence cases.

Plaintiff is asserting his ADEA claim under the mixed motive framework.[6] In a mixed-

---

[6]It is not actually clear whether the Supreme Court decision in Desert Palace, holding that direct evidence of discrimination is not required in mixed-motive cases asserted under Title VII of the Civil Rights Act of 1964, also applies to claims asserted under the ADEA. See Mereish, 359 F.3d at 339-340; see also Hill, 354 F.3d at 285 n. 2. Nevertheless, even assuming for purposes of consideration of Defendant's motion for summary judgment that circumstantial evidence is all that is required, Plaintiff's claim is still subject to summary judgment for the reasons set forth hereinabove. Cf. Warch v. Ohio Casualty Insurance Co., 435 F.3d 510, 520 (4th Cir. 2006).



motive case, once the Plaintiff has produced evidence that an illegitimate criterion was a motivating factor in the employment decision, both the burden of production and the burden of persuasion shift to the Defendant, and the Defendant must show by a preponderance of the evidence that it would have made the same employment decision without any discriminatory animus. Desert Palace, Inc., 539 U.S. at 93-102; Bequeath v. L.B. Foster Co., 367 F.Supp.2d 779, 786 n. 4 (W.D.Pa. 2005). See also 42 U.S.C. § 2000e-2(m).   Here, after careful review and consideration of the evidence and arguments presented in this case, the undersigned finds and concludes that the corporate Defendant is entitled to summary judgment on Plaintiff's ADEA claim, because Plaintiff has failed to present sufficient evidence, either direct or circumstantial, to show that an illegitimate criterion (i.e., Plaintiff's age) was a motivating factor in the employment decision.  Further, the evidence reflects that the Defendant would have made the same decision without any discriminatory animus.

The evidence cited by the Plaintiff to support this claim are Pond's statements to him that he was "old enough to retire" and that he was "old enough and could start drawing Social Security". Plaintiff's Deposition, pp. 45-47, 52-53.  Plaintiff also points to the fact that Plaintiff was replaced with an employee almost forty (40) years younger.  Pond Deposition, p. 52; Stillinger Deposition, p. 59.[7]  Pond's statements do not, however, reflect that the reason for Plaintiff's termination was his age.  Rather, the evidence reflects that Pond had already decided that Plaintiff was going to have to be terminated, and these statements were made only in the context that he had the option to retire.  Plaintiff's Deposition, pp. 17, 45-46, 53-54; Pond Deposition, pp. 33-34; Stillinger Deposition, pp. 85-89. See Martin v. Bayland, Inc., No. 05-41085, 2006 WL 1308017 (5th

---

[7]The ADEA applies to individuals who are at least forty (40) years of age and older. 29 U.S.C. § 631(a).  At the time of his termination Plaintiff was in his late sixties. Plaintiff's Deposition, pp. 11-12.  Plaintiff's replacement was in his twenties.



Cir. May 12, 2006) [employer's comment to employee that "I think it's time to hang it up and-for you to retire" not sufficient in and of itself to constitute either direct or circumstantial evidence of discriminatory animus]; <u>Zeigler v. Beverly Enterprises Minnesota, Inc.</u>, 133 F.3d 671 (8th Cir. 1998) [questioning employee about retirement plans insufficient to support ADEA claim]; <u>Debs v. Northeastern Illinois University</u>, 153 F.3d 390 (7th Cir. 1998) [questions about Plaintiff's retirement plans and comment that Plaintiff was "too old" to continue in his work not in and of themselves sufficient to establish ADEA claim].

   The evidence shows that, prior to Plaintiff's confrontation with Pond's daughter, he had a close personal friendship with the Pond family, and there is no evidence to show that Pond thought Plaintiff was too old to do his job. <u>Plaintiff's Deposition</u>, p. 68; <u>Pond Deposition</u>, p. 12; <u>Cathy Varnadore Deposition</u>, pp. 101-102; <u>Doug Varnadore Deposition</u>, p. 17. Rather, the evidence clearly reflects that Plaintiff's termination was due to his confrontation with Pond's daughter, not because of his age. <u>Plaintiff's Deposition</u>, pp. 45, 52; <u>Cathy Varnadore Deposition</u>, pp. 40, 46; <u>Pond Deposition</u>, pp. 29-33, 35; <u>Stillinger Deposition</u>, pp. 85-86; <u>Ziegler v. Beverly Enterprises-Minnesota, Inc.</u>, 133 F.3d 671, 676 (8th Cir. 1998) [Suggestions to plaintiff to consider retiring show no more than desire for plaintiff to leave the defendant's employment. "Retirement would have been an easier and less contentious option, at least from the employer's viewpoint, than termination. We do not think that suggesting retirement to an employee who is eligible for retirement, and who is not performing satisfactorily, provides a reasonable basis for inferring age discrimination."]; <u>Kaniff v. Allstate Ins.</u>, 121 F.3d 258, 263 (7th Cir. 1997) [plaintiff being told that his situation was serious and he should consider retiring was not sufficient evidence of age discrimination]. Plaintiff himself concedes that, prior to February 2004, Pond had never done anything that could be considered to



have been discriminatory and had treated Plaintiff well, and that it was Plaintiff's disagreement with Pond's daughter that led to his termination. <u>Plaintiff's Deposition</u>, pp. 26, 36, 54-55, 68. <u>See also Pond Deposition</u>, pp. 29-33, 62. The undersigned can discern no discriminatory motivation or animus in this evidence.

Further, even assuming that the evidence is sufficient to create an issue of fact as to whether the Defendant was motivated by both Plaintiff's age as well as other reasons in terminating Plaintiff's employment, the Defendant can nevertheless avoid liability by showing that Plaintiff would have been terminated even in the absence of a discriminatory motive. <u>EEOC v. Warfield-Rohr Casket Co., Inc.</u>, 364 F.3d 160, 164 (4th Cir. 2004). Here, the evidence clearly reflects that Plaintiff would have been terminated by Ponds, no matter what his age. <u>Plaintiff's Deposition</u>, pp. 26, 36, 52, 55; <u>Stillinger Deposition</u>, pp. 85-86; <u>Pond Deposition</u>, p. 62. <u>Warfield-Rohr</u>, 364 F.3d at 164. Plaintiff's argument that he was replaced by someone in their twenties is not sufficient to save this claim. <i>Cf.</i> <u>Finney v. Planned Parenthood of New York City</u>, No. 02-7942, 2003 WL 22928730 at *6 (S.D.N.Y. Dec. 10, 2003) ["The filling of plaintiff's position by an individual outside of [his] protected class is not enough, absent evidence suggestive of discrimination, to satisfy plaintiff's burden at this stage."]; <u>see</u> <u>e.g.</u>, <u>Holder v. City of Raleigh</u>, 867 F.2d 823, 825-826 (4th Cir. 1989) [rejecting nepotism as an impermissible hidden motive equivalent to discrimination]; <u>DeJarnette v. Corning, Inc.</u>, 133 F.3d 293, 299 (4th Cir. 1998) ["[I]t is not our province to decide whether the reason was wise, fair or even correct, ultimately, so long as it truly was the reason for the Plaintiff's termination"], quoting <u>Giannopoulos v. Brach & Brock Confections</u>, 109 F.3d 406, 410 (7th Cir. 1997); <u>Gairola v. Virginia Dep't of General Services</u>, 753 F.2d 1281, 1288, n. 4 (4th Cir. 1985) [a case should be dismissed "...when the only evidence in support of the plaintiff's...case is based on

8



unfounded conjecture...that [his] disfavorable treatment was the result of discrimination...."][8].

Therefore, Plaintiff's first cause of action alleging an age discrimination claim under the ADEA should be dismissed.

## II.

### (Breach of Contract Claim)

In his second cause of action, Plaintiff alleges that during the course of his employment with the corporate Defendant he received "a written handbook or policy manual, along with verbal assurances from management, which created and evidenced an implied contract of employment controlled by the verbal assurances and policies set forth therein", and that his termination was in violation of this contract. Complaint, at ¶ 23. Plaintiff asserts this claim against the corporate Defendant only.

The Defendant asserts that it had no employment contract with the Plaintiff, making Plaintiff an at-will employee. It is undisputed that South Carolina is an employment at-will state, and that when an employee is an employee at-will, either party has the right to terminate the employee relationship at any time, for any reason or no reason at all, without incurring liability. Dodgens v. Kent Manufacturing Co., 955 F.Supp. 560, 566 (D.S.C. 1997); Ludwig v. This Minute of Carolina, Inc., 337 S.E.2d 213, 214-215 (S.C. 1985); Gause v. Doe, 451 S.E.2d 408, 409 (S.C.Ct.App. 1994); Toth v. Square D Co., 377 S.E.2d 584, 587 (S.C. 1989) [Gregory, C.J. dissenting]. While this status can be altered by the creation of a "contract" between the employee and employer, or if an employer

---

[8]Although the cited passage from Gairola involved a directed verdict, the standard for granting a motion for summary judgment is the same. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).



issues policies that alter the at-will employment status of the relationship; <u>Small v. Springs Industries, Inc.</u>, 357 S.E.2d 452, 455 (S.C. 1987); to alter the at-will relationship between the parties, the cited provisions or policies must be drafted in sufficiently mandatory terms to give rise to a reasonable expectation on the part of the employee of continued employment. Further, the employee must establish that the employer breached the pertinent provisions of the employee handbook or of the policies at issue. <u>Id</u>.

The corporate Defendant in this case has an employee handbook. Plaintiff does not contend that he had a formal written contract of employment with the Defendant, but argues that the Defendant's handbook contains sufficiently mandatory language to constitute a contract between the parties. However, although the question of whether an employee handbook constitutes a contract should be submitted to the jury if the "evidence is either conflicting or is capable of more than one inference"; <u>Hessenthaler v. Tri-County Sister Health, Inc.</u>, 616 S.E.2d 694, 697 (S.C. 2005); after careful review of the evidence submitted in this case, the undersigned does not find that a sufficient question of fact is presented as to whether this handbook constituted an employment contract to survive summary judgment.

First, the contract contained an acknowledgment form that was required to be signed by every employee; <u>see</u> <u>Cushman Deposition, Exhibit 1</u>; <u>Kehr Deposition, Exhibit 1</u>; <u>White Deposition, Exhibit 1</u>; <u>McCollum Deposition, Exhibit 1</u>; <u>Youngblood Deposition, Exhibit 1</u>;[9] and the following language was right above where the employee was required to sign their name:

I understand that this Handbook represents only the current policies, regulations, and

---

[9]While Plaintiff's own acknowledgment form is missing out of his employment file; <u>see</u> <u>Plaintiff's Deposition</u>, p. 7; <u>Cathy Varnadore Deposition</u>, pp. 55-56; Plaintiff conceded at his deposition that he probably signed the acknowledgment form. <u>Plaintiff's Deposition</u>, p. 14.

10



benefits, and that it does not create a contract of employment.  A.B. Beverage Co., Inc. retains the rights to change wages and all other working conditions as it deems necessary.

I understand that I am employed for no particular period, that I have the right to terminate my employment at any time, with or without cause, and that the Company has a similar right.  I further understand that my status as an "at will" employee cannot be changed except in writing, signed by the President of A.B. Beverage Co., Inc.

Kehr Deposition, Exhibit 1.

The beginning "welcome" section of the handbook, on page two, also contains the following language:

Finally, this Handbook should not be construed as creating any kind of employment contract for any particular period.  All of our employees are considered to be employed "at-will".  Your status as an "at-will" employee may not be changed except by written agreement signed by the President of the Company.

Stillinger Deposition, Exhibit 2, p. 2.

Under South Carolina law, a "conspicuous disclaimer" in a handbook stating that the handbook is not a contract and that the employee is an at-will employee is normally sufficient to ensure that a handbook does not become a contract of employment. Hessenthaler, 616 S.E.2d at 697. The South Carolina Supreme Court has further held that "a disclaimer appearing in bold, capitalized letters, in a prominent position, is conspicuous [as a matter of law]". Id.  However, Plaintiff argues that the cited language in the Defendant's employee handbook does not meet this standard because it was not in bold type, was not capitalized, and was not in a prominent position.

Plaintiff is correct in noting that the cited language was not in either bold or capitalized letters, although because the language at issue appeared directly above where each employee was required to sign the acknowledgment, it is at least arguable that this language was placed in a prominent position.  However, even if this language was not conspicuous as a matter of

11



law, that merely means that the Court must look at all of the evidence in determining whether there is an issue of fact as to whether this handbook constituted a contract. Id, citing Marr v. City of Columbia, 416 S.E.2d 615, 616 (S.C. 1992). Under the evidence presented, there is not a genuine issue of fact as to whether Plaintiff had an employment contract with the Defendant as a result of this handbook. In addition to the handbook containing the language cited hereinabove, which specifically provides that the handbook was not a contract and that each employee is an at-will employee of the Defendant, the evidence reflects that Plaintiff clearly knew about this language and in fact was responsible for explaining this language and the fact that the employee handbook did not create a contract of employment with the Defendant to new employees. See generally, Plaintiff's Deposition, p. 13; Cushman Deposition, pp. 10-15; Kehr Deposition, pp. 14-16, 21-24; McCollum Deposition, pp. 22-25; White Deposition, pp. 10-17; Youngblood Deposition, pp. 8-9, 13. The fact that Plaintiff's own duties as Administrative Director for the Aiken facility included explaining the disclaimer to new employees  and the fact that they were at-will, belies the argument he now makes in this lawsuit that this handbook constituted a contract of employment with the Defendant. Horton v. Darby Electric Co., 599 S.E.2d 456, 460-461 (S.C. 2004) [finding Plaintiff had actual notice company manual did not alter employment at-will status where Plaintiff had the responsibility of interpreting the manual].

          Further, even if there was a question of fact as to whether Plaintiff had full knowledge of the disclaimer contained in the handbook and its import, his claim that the anti-discrimination and termination language in the handbook were couched in such mandatory terms as to create an enforceable contract is without merit. As noted, the handbook contained language specifically advising employees that it was not a contract and that the employees were "at-will". The handbook



also stated that it constituted only "a summary of the employee benefits, personnel policies, and employment regulations in effect at the time of publication", and that the Defendant "reserve[d] the right to add, change or delete benefits and policies, as we deem appropriate." <u>Stillinger Deposition, Exhibit 2</u>, p. 2.  While the handbook did contain an equal employment opportunity section in which the Defendant stated that it was "committed to providing equal opportunity in all of our employment practices...without regard to...age...or any other status protected by law", the South Carolina Supreme Court has specifically held that such general policy statements of non-discrimination do not create an enforceable contract.  <u>Hessenthaler</u>, 616 S.E.2d at 698-699.  <u>See</u> <u>Stillinger Deposition, Exhibit 2</u>, p. 2.

As for termination, the handbook does not even contain a progressive disciplinary policy, instead stating only that violation of the Defendant's no harassment policy "will subject an employee to disciplinary action, up to and including immediate discharge." <u>Stillinger Deposition, Exhibit 2</u>, p. 3.  Additionally, these policies are not only not couched in sufficiently mandatory language to constitute a contract, but Plaintiff has failed to show a violation of either the equal opportunity or the discharge language in the handbook.  As previously noted, Plaintiff has failed to present sufficient evidence to show that he was discriminated against on the basis of his age, and the handbook provides not only that employees are at-will employees, but that they can be discharged without any prior disciplinary proceedings. <u>Grant v. Mount Vernon Mills, Inc.</u>, 634 S.E.2d 15, 22 (S.C.Ct.App. 2006) ["[B]ecause nothing in the employee handbook outlined progressive disciplinary procedures in mandatory terms, the presumption that the employment was at-will was not rebutted and no disclaimer was needed.  Accordingly, we hold the handbook did not contain promises enforceable in contract."]; <u>Small</u>, 357 S.E.2d 452, 455 (S.C. 1987) [only policy drafted in sufficiently



mandatory terms may serve to alter at-will employment status]; <u>Wadford v. Hartford Fire Ins. Co.</u>, No. 87-2872, 1988 WL 492127 at *5 (D.S.C. 1988) ["A review of the relevant authorities... reveals that a policy or representation must limit the duration of employment or the employer's right to terminate employment in order to alter at-will status.  Other terms and conditions of employment, including pay, benefits, job duties, or location of performance may be changed prospectively by either party without violating an employment contract with an indefinite term."]; <u>Storms v. Goodyear Tire & Rubber Co.</u>, 775 F.Supp. 862, 867 (D.S.C. 1991) [noting that language cited by the employee was "not couched in mandatory terms and [did] not contain language that specifically [limited the employer's] right to demote or terminate [the Plaintiff] without cause"].

Finally, Plaintiff's argument that he had an "implied" contract or that his at-will status was otherwise altered by oral statements is also without merit.  Although Plaintiff also talks about the Defendant's harassment policy in his brief, this claim is apparently based on Plaintiff's deposition testimony that Joe Stout told him "[t]o do a good job [a]nd work and be fair with us and we'll work and be fair with you." <u>Plaintiff's Deposition</u>, p. 14.  This statement is not sufficient to constitute an oral offer for definite employment, or to otherwise change Plaintiff's at-will status. <u>See  Prescott v. Farmers Telephone Cooperative, Inc.</u>, 516 S.E.2d 923, 926 (S.C. 1999) [statements indicating that employee could have job as long as he wanted as long as he kept his "nose clean" and did a good job not sufficient to alter at-will employment status]; <u>Small v. Springs Industries, Inc.</u>, 388 S.E.2d 808, 810 (S.C. 1990); <i>cf.</i> <u>DeJong v. General Elec. Co</u>, No. 93-1867, 1994 WL 363364 at **1 (4th Cir. July 14, 1994) [alleged promise of a promotion did not change essential character of plaintiff's at-will employment or alter plaintiff's at-will employment status]. Therefore, Plaintiff's breach of contract claim is without merit and should be dismissed.

14



## III.

### (Claim for Breach of Contract Accompanied by a Fraudulent Act)

In his third cause of action, Plaintiff alleges that the Defendants committed the state tort of breach of contract accompanied by a fraudulent act.    To maintain this cause of action, Plaintiff must prove 1) a breach of a contract; 2) fraudulent intent relating to the breaching of the contract and not merely to its making; and 3) a fraudulent act accompanied the breach. RoTec Services, Inc. v. Encompass Services, Inc., 597 S.E.2d 881, 883 (S.C.Ct.App. 2004); Conner v. City of Forest Acres, 560 S.E.2d 606, 612 (S.C. 2002).

Here, Plaintiff's claim necessarily fails because, for the reasons set forth in Section II of this Report and Recommendation, supra, he has failed to show the existence of any contract between himself and the corporate Defendant.  As the existence of a contract is a necessary predicate to a breach of contract accompanied by a fraudulent act claim, the Defendants are entitled to summary judgment on this claim.   Dodgens v. Kent Mfg. Co., 955 F.Supp. 560, 567 (D.S. 1997) [breach of contract accompanied by a fraudulent act requires proof of an underlying contract]; Floyd v. Country Squire Mobile Homes, Inc., 336 S.E. 2d 502, 503 (S.C.Ct.App. 1985); Shelton v. Oscar Mayer Foods Corp., 459 S.E.2d 851 (S.C.Ct.App. 1995) [claims involving breach of contract accompanied by a fraudulent act require the existence of a contract beyond one at-will], aff'd, 481 S.E.2d 706 (S.C. 1997).

## IV.

### (Claim for Intentional Infliction of Emotional Distress)

In his fourth cause of action, Plaintiff asserts a claim for intentional infliction of emotional distress, also called "outrage", against the corporate Defendant as well as the natural

15



Defendant Cathy Varnadore. Under South Carolina law, in order to recover on a claim for intentional infliction of emotional distress, Plaintiff must demonstrate that the Defendant's conduct was so extreme and outrageous that it exceeded all possible bounds of decency, and that the emotional distress suffered by the Plaintiff was so severe that "no reasonable [person] could be expected to endure it." See Wright v. Sparrow, 381 S.E.2d 503, 505 (S.C.Ct.App. 1989); Ford v. Hutson, 276 S.E.2d 776, 778 (S.C. 1981); Shipman v. Glenn, 443 S.E.2d 921 (S.C.Ct.App. 1994); Gattison v. South Carolina State College, 456 S.E.2d 414 (S.C.Ct.App. 1995). Plaintiff alleges that Varnadore engaged in behavior that was designed to harass, injure, embarrass, and belittle him, which included a campaign to ensure that Plaintiff would be terminated from his job. Plaintiff alleges that this conduct, which was ratified by the corporate Defendant, was "extreme, outrageous, exceeded all possible bounds of decency, and intentionally or recklessly inflicted severe emotional distress upon the Plaintiff." Complaint, ¶¶ 36-38.

        Defendants initially argue that this claim is barred by the exclusivity provision of the South Carolina Worker's Compensation Act, S.C.Code Ann. § 42-1-540 (1985). Under this Act, a claim of intentional infliction of emotional distress falls within the scope of the Act except where the "tortfeasor/co-employee is the 'alter ego' of the employer....". Dickert v. Metropolitan Life Ins. Co., 428 S.E.2d 700, 701 (S.C. 1993); see Loges v. Mack Trucks, Inc., 417 S.E.2d 538, 540 (S.C. 1992); Palmer v. House of Blues Myrtle Beach Restaurant Corp., No. 05-3301, 2006 WL 2708278 (D.S.C. Sept. 20, 2006). Plaintiff argues that Cathy Varnadore falls under this exception, because she was not only the Vice President of the Defendant at the time of the conduct at issue (she is now the President of the company), but she was the President's daughter and a significant stockholder and high level officer who was being groomed to become the President herself. Pond Deposition, pp. 31-

16



33.  See  Dickert, 428 S.E.2d at 701 [To fall under this exception, the tortfeasor must be a "dominant"

corporate owner or officer of the employer.].

        However, the Court does not have to decide the question of Cathy Varnadore's status

with the Company,  because even if Plaintiff's claim is not barred by the exclusivity provision of the

South Carolina Worker's Compensation Act, he has failed to submit evidence sufficient to reach the

high threshold required under state law for maintenance of this cause of action. Considered in the

light most favorable to the Plaintiff, the evidence reflects that during the course of his employment

Plaintiff and Varnadore had, and had always had, a good relationship, and that Plaintiff was

considered to be a close friend by the entire Varnadore family.  Plaintiff's Deposition, p. 68; Pond

Deposition, p. 12; Cathy Varnadore Deposition, pp. 101-102, and Exhibit 5; Doug Varnadore

Deposition, p. 17; Chris Varnadore Deposition, p. 18.  It was not until February 2004 that there was

any conflict between these two individuals. Specifically, on February 11, 2004, Plaintiff and Cathy

Varnadore got into a contentious argument, which included physical contact but did not result in any

injuries. Thereafter, Plaintiff and Cathy Varnadore had little further communications given the

animosity between them. Because of their confrontation, however, Varnadore informed her father

that she could no longer continue to work with the Plaintiff under the circumstances, resulting in

Plaintiff's termination. Plaintiff's Deposition, pp. 17-18; Cathy Varnadore Deposition, pp. 40-43, 46;

Pond Deposition, pp. 29-33, 62.

        While this was certainly an unfortunate series of events for the Plaintiff, this evidence

is simply not sufficient to create a genuine issue of fact as to whether Varnadore engaged in the

extreme behavior required to maintain a cause of action for outrage in South Carolina.  See Corder

v. Champion Road  Machinery International Corporation, 324 S.E.2d 79, 81 (1984) [In South

17



Carolina, a plaintiff can only succeed on a claim for intentional infliction of emotional distress "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."]; Hudson v. Zenith Engraving Company, Inc., 259 S.E.2d 812, 814 (1979); *cf.* Gattison, 456 S.E.2d at 416-417 [even verbally abusive accusations in the business setting do not give rise to a claim for intentional infliction of emotional distress]; Folkens v. Hunt, 348 S.E.2d 839, 845 (S.C.Ct.App. 1986); Wright, 381 S.E.2d at 505-506 [allegations that employer plotted to build a case to justify firing  employee by loading her with responsibility while stripping her of authority, changing the way she should perform her duties and accusing her of not following directions, insufficient to assert a claim for intentional infliction of emotional distress]; Shipman, 443 S.E.2d at 922-923 [supervisor's conduct in ridiculing speech impediment of and threatening to fire an employee who had cerebral palsy did not provide a sufficient basis for intentional infliction of emotional distress]; Wilkes v. Young, 28 F.3d 1362, 1366 (4th Cir. 1994); Craig v. Andrew Aaron & Associates, Inc., 947 F.Supp. 208, 212-213 (D.S.C. 1996).

Therefore, Plaintiff's cause of action for outrage should be dismissed.

## V.

### (Claims for Assault and Battery)

In his fifth cause of action, Plaintiff asserts a claim for common law battery against the Defendant Cathy Varnadore, while in his sixth cause of action he asserts a claim for assault against Varnadore.  In these causes of action, Plaintiff alleges that Varnadore "did intentionally and forcefully contact the Plaintiff without authorization on or about February 11, 2004", and that Plaintiff did "apprehend the forceable contact from Varnadore, placing him in reasonable fear of



bodily harm from this contact." <u>Complaint</u>, ¶¶ 42, 45, 46.

In South Carolina an assault occurs when a person has been placed in reasonable fear of bodily harm by the conduct of the Defendant. <u>Jones by Robinson v. Winn Dixie Greenville, Inc.</u>, 456 S.E.2d 429 (S.C.Ct.App. 1995), citing <u>Gathers v. Harris Teeter Supermarket, Inc.</u>, 317 S.E.2d 738 (S.C.Ct.App. 1984). Battery is the actual infliction of any unlawful, unauthorized violence on the person of another, irrespective of its degree. <u>Jones by Robinson v. Winn Dixie Greenville, Inc.</u>, <u>supra</u>. Considered in the light most favorable to the Plaintiff, the evidence reflects that on February 11, 2004 Mrs. Varnadore went with the Plaintiff to his office to discuss her dispute with Chris Varnadore, and that when Plaintiff refused to take her side, she became irrate and began hitting him across the head with her hands. Plaintiff testified that

> she raised her arm and came over and started hitting me on the head, bashing me with her hands, got in my face. It was hard for me to breathe. I hollered, woman, get off me. She said, you can't do this to me and hit me and grabbed my shoulders and all like that. Her hair was all in her face. It was in my face. I reached up to her shoulder, pushed her off me. I'm sure her hair got pulled some in that because I was trying to get her off. It was hard for me to breathe. She was out of control. Finally, after she got up and left, I think I hollered, somebody call the cops or get some help, something like that.

<u>Plaintiff's Deposition</u>, pp. 27-29.

While Cathy Varnadore disputes Plaintiff's version of what happened during their conversation and confrontation, "[i]t is not the function of the trial court but rather that of jury to make credibility determinations on disputed questions of fact...[a]ll credibility questions must be considered most favorably to the non-moving party, and their resolution left to the jury." <u>Boutros v. Canton Regional Transit Authority</u>, 997 F.2d 198, 202 (6th Cir. 1993). Therefore, the Court cannot choose to believe the averments of fact contained in Varnadore's testimony and disregard the testimony of the Plaintiff. As noted, at summary judgment, this Court cannot make credibility



determinations to resolve issues of fact; <u>Gray v. Spillman</u>, 925 F.2d 90, 95 (4th Cir. 1991); <u>Davis v. Zahradnick</u>, 600 F.2d 458, 460 (4th Cir. 1979); and where a conflict from a set of given facts exists, this Court is required to consider the facts presented, and all inferences to be drawn from the facts, in the light most favorable to the non-moving party.  <u>Cole v. Cole</u>, 633 F.2d 1083, 1092 (4th Cir. 1980); <u>See</u> <u>Ross v. Communications Satellite Corp.</u>, 759 F.2d 355, 364 (4th Cir. 1985).

Therefore, in considering whether summary judgment on these claims is appropriate, the undersigned must assume that the Plaintiff's version of the facts is true.  Considered under this standard, while there is evidence in the file to support the Defendant's defense to these claims, the undersigned does not find that "[n]o reasonable trier of fact could conclude" that Plaintiff was subjected to an assault and battery by the Defendant Varnadore based on the evidence presented. <u>Spratley v. Hampton City Fire Department</u>, 933 F.Supp. 535, 542 (E.D.Va. 1996), <u>aff'd</u>, 125 F.3d 848 (4th Cir. 1997).  Defendants' motion for summary judgment with respect to Plaintiff's claims for assault and battery should be denied.

## VI.

### (Claim for Wrongful Discharge)

Plaintiff alleges in his eighth cause of action that by "terminating Plaintiff's employment for his refusal to accept an assault and battery by a company officer as a condition of employment and/or his opposition to the same, AB Beverage wrongfully discharged Plaintiff in violation of the public policy of the State of South Carolina.  <u>Complaint</u>, at ¶ 50.  Plaintiff asserts this claim against "all Defendants".

In <u>Ludwig</u>, 337 S.E.2d at 213, the South Carolina Supreme Court held that a cause of action in tort exists under South Carolina law where a retaliatory discharge of an at-will employee

constitutes a violation of a clear mandate of public policy. <u>Id</u>, at 216.  In <u>Ludwig</u>, the plaintiff was found to have a wrongful discharge claim where the employer required the employee to violate the law as a condition of retaining employment.  <u>Ludwig</u> held that "the public policy exception is invoked when an employer requires an at-will employee, as a condition of retaining employment, to violate the law". <u>Id</u>.  Hence, the application of this exception is predicated upon the violation of a clear mandate of public policy. <u>Culler v. Blue Ridge Electric Cooperative, Inc.</u>, 422 S.E. 2d 91 (S.C. 1992).

The undersigned agrees with the Defendants that Plaintiff has failed to identify any public policy violation with respect to this claim.  Plaintiff's allegation is that he was terminated for refusing to "accept" the alleged assault and battery  by Varnadore, apparently attempting to tie his claim to a Maryland case which held that retaliation for refusing to forego legal redress for assault and battery violated the public policy of that State.  *Cf*. <u>Watson v. Peoples Sec. Life Insurance Co.</u>, 588 A.2d 760, 766-767 (Md. 1991). However, there is no evidence to show or to support any claim that Plaintiff was terminated because he refused to forego any legal rights he may have had under South Carolina law with respect to the alleged assault and battery committed by Varnadore.  Rather, Plaintiff was terminated because Varnadore told her father she could no longer work with the Plaintiff under the circumstances.  There is no evidence to show that if Plaintiff would not press charges or would have foregone any lawsuit against Varnadore for allegedly assaulting him that he could have remained employed with the corporate Defendant.  Plaintiff was going to be terminated regardless.

While Plaintiff alleges he was wrongfully discharged, it was not because of the violation of any clear mandate of public policy. The public policy exception for the discharge of an

21



at-will employee encompasses only "public rights", not "private" rights, and Plaintiff has therefore failed to set forth a valid claim for wrongful discharge in violation of the public policy of South Carolina. See Weinberger v. MCI Telecommunications, Inc., No. 92-2550, 1994 WL 18081 (4th Cir. Jan. 25, 1994) ["The public policy exception encompasses only public rights granted by existing law, not private rights."]. This claim should be dismissed.

## VII.

### (Claim for Negligent Supervision)

In his ninth and final cause of action, Plaintiff alleges that on February 11, 2004 Cathy Varnadore "forcefully and intentionally contacted Plaintiff while on AB Beverage's premises", that "[a]s such, AB Beverage had actual or constructive knowledge that it had ability to control Varnadore's actions" because Varnadore "had shown a propensity for behavior that was unreasonably confrontational and combative throughout her work history at AB Beverage", particularly as directed at the Plaintiff, that AB Beverage further "had actual or constructive knowledge of the need to control Varnadore", and that "[a]s a result of AB Beverage's negligent supervision of Varnadore," Plaintiff suffered damages. Complaint, ¶¶ 53-56. This claim is asserted against the corporate Defendant only.

An employer may be liable for negligent supervision if an employee intentionally harms another when she: 1) is upon the premises in possession of the employer or upon which the employee is privileged to enter only as its employee, or 2) is using a chattel of the employer; and the employer a) knows or has reason to know that it has the ability to control its employee, and b) knows or should know of the necessity and opportunity for exercising such control. Deggenhart v. Knights of Columbus, 420 S.E.2d 495, 496 (S.C. 1992); see also Moore by Moore v. Berkeley County School



22

District, 486 S.E.2d 9, 12-13 (S.C.Ct.App. 1997). Based on this criteria, since Varnadore was at a sales meeting of the Defendant and was attending such in her capacity as a Vice President of the corporate Defendant when she allegedly engaged in the conduct complained of, it is conceivable that the corporate Defendant could be liable for Varnadore's actions under this legal theory if it knew or should have known of the necessity and opportunity for exercising control over her to prevent her from intentionally harming the Plaintiff.

However, Plaintiff has presented no evidence whatsoever to show any knowledge on behalf of the corporate Defendant that Cathy Varnadore was or had engaged in any violence or physically abusive activity over which the Defendant failed to exercise control. While Plaintiff alleges in his Complaint that Varnadore had a "propensity for behavior that was unreasonably confrontational and combative throughout her work history....", the evidence presented to this Court reflects that, prior to February 11, 2004, Plaintiff and Varnadore were good friends who often socialized with each other. See Cathy Varnadore Deposition, Plaintiff's Exhibit 5.There is no evidence that Varnadore has ever been involved in any violent disagreements with any other employees, she had never been reprimanded or counseled for any reason, and Plaintiff himself testified that prior to February 11, 2004 Varnadore had not done anything to him that was discriminatory or offensive. Plaintiff's Deposition, p. 55; Pond Deposition, pp. 16-19. This claim is without merit and should be dismissed.

### Conclusion

Based on the foregoing, it is recommended that the Defendant Cathy Varnadore's motion for summary judgment with respect to Plaintiff's claims for assault and battery (fifth and sixth causes of action) be **denied**. Defendants' motion for summary judgment with respect to all other

23



claims asserted in this lawsuit should be **granted**, and those claims should be **dismissed.**

Further, since Plaintiff's fifth and sixth causes of action are asserted against the Defendant Cathy Varnadore only, if the Court adopts this recommendation, Plaintiff's claims for assault and battery will be the only claims remaining in this lawsuit, and all Defendants should be dismissed as party Defendants in this case except for the Defendant Cathy Varnadore.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

July 2, 2007

24

