IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Robert Westmoreland, | ) | |
| | ) | C/A No. 1:05-3475-MBS |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| AB Beverage Company, Inc., Cathy | ) | **OPINION AND ORDER** |
| Varnadore, and Joseph Pond, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Robert Westmoreland brings this action against his former employer, Defendant AB Beverage Company, Inc. (AB Beverage). Plaintiff had been employed as Sales Administrator/ Administrative Director for the company's facility in Aiken, South Carolina. At the time of the underlying events, Defendant Cathy Varnadore was Vice President of AB Beverage. Defendant Joseph Pond was President and majority owner of the company. Defendant Varnadore is the daughter of Defendant Pond.

Plaintiff originally brought this action in the South Carolina Court of Common Pleas on November 17, 2005, alleging that he was terminated on the basis of his age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 630(b). Plaintiff also alleges state law claims for breach of contract, breach of contract accompanied by a fraudulent act, intentional infliction of emotional distress, battery, assault, wrongful discharge, and negligent supervision. Defendants removed the court on the basis of federal question and diversity jurisdiction on December 13, 2005.

This matter is before the court on Defendants' motion for summary judgment, which motion was filed September 11, 2006 (Entry 17). Plaintiff filed a memorandum in opposition on October 16, 2006, to which Defendants filed a reply on October 24, 2006. In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Bristow Marchant for pretrial handling. The Magistrate Judge filed a Report and Recommendation on July 2, 2007 in which he recommended that Defendant's motion for summary judgment be granted as to all Plaintiff's claims except his causes of action for assault and battery. Plaintiff filed objections to the Report and Recommendation on July 23, 2007. Defendants filed a reply to Plaintiff's objections on August 7, 2007.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of any portions of the Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

## I. FACTS

The facts are thoroughly set forth in the Report and Recommendation. Briefly, Plaintiff was employed by AB Beverage in 1984. (Entry 17, Exhibit A, Deposition of Robert Westmoreland ("Westmoreland Depo."), p. 10 . He was forty-seven or forty-eight years old when he was hired. Id., p. 12. Plaintiff developed a friendship with Defendant Varnadore during his employment at AB Beverage. Id., p. 70. Also employed at AB Beverage was Chris Varnadore, the brother of Defendant

Varnadore's husband. It appears from the record that Defendant Varnadore had an on-going dispute with her brother-in-law regarding a personal matter, that Defendant Varnadore did not get along with Chris's wife.

On February 11, 2004, following a semi-annual sales meeting, Plaintiff got up to leave and headed toward his office. Id., p. 25. Defendant Varnadore followed him down the hall, wanting to discuss her plan to "get rid" of Chris. Id. Defendant Varnadore complained about her brother-in-law and his wife. When Defendant Varnadore asked Plaintiff whether he agreed with her plans, Plaintiff stated, "[N]o. . . . Chris is part of your family. . . . It would hurt his mother and daddy for you to do something like this." Id., p. 26. After some further discussion, Defendant Varnadore told Plaintiff that he had to make a choice between the two couples. Plaintiff refused to make a choice. Id., p. 27. According to Plaintiff, Defendant Varnadore screamed at him, "If you don't make a choice, I know which side you're taking." Id. Defendant Varnadore then cornered Plaintiff in his office, "screaming and yelling all these accusations. She was in a rage." Id.

Plaintiff alleges that Defendant Varnadore "shook her finger at [him,] said, you better [watch] your step." Id., p. 28. Plaintiff replied, "Maybe you ought to watch yours." Defendant Varnadore alleges that Defendant Varnadore then:

> raised her arm and came over and started hitting me on the head, bashing me with her hands, got in my face. It was hard for me to breathe. I hollered, woman get off me. She said, you can't do this to me and hit me and grabbed my shoulders and all like that. Her hair was all in her face. It was in my face. I reached up to her shoulder, pushed her off me. I'm sure her hair got pulled some in that because I was trying to get her off. It was hard for me to breathe. She was out of control. Finally, after she got up and left, I think I hollered, somebody call the cops or get some help, something like that.

Id., p. 29.

Defendant Varnadore "stormed off." Id. She later told her father, Defendant Pond, that she could no longer work with Plaintiff. Id., pp. 26, 52. Defendant Pond eventually terminated Plaintiff. Defendant Pond stated that "he didn't want to get rid of [Plaintiff], but that he had no choice." Id., p. 52. He told Plaintiff that it was time for Plaintiff to retire or be fired. Id., pp. 45, 52. According to Plaintiff, Defendant Pond said, "You can get social security now and so you might as well leave. You're old enough to leave." Id. Plaintiff contends that it was easier for Defendant Pond to discharge him because of Plaintiff's age. Id., p. 46. Plaintiff was replaced by "some young guy." Id., p. 57.

Plaintiff asserts that he was emotionally upset after the confrontation with Defendant Varnadore. Id., p. 48. He did not seek medical attention or counseling. Id. Plaintiff, who has a heart condition, did obtain prescriptions to help him sleep and to help him with anxiety. Id., p 49.

## II. DISCUSSION

A.     Age Discrimination

Plaintiff first contends that the Magistrate Judge erroneously concluded that Plaintiff failed to produce sufficient evidence that his termination was partly motivated by his age. The court disagrees.

Under the ADEA, an employer may not discharge any employee because of age. See 29 U.S.C. § 623(a)(1). Generally, an ADEA plaintiff may prevail in an age discrimination case by proceeding under either a "mixed-motive" or a "pretext" framework. Loveless v. John's Ford, Inc., 2007 WL 1381597 (4th Cir. May 9, 2007) (citing Hill v. Lockheed Martin Logistics Mgmt., 354 F.23d 277, 284-85 (4th Cir. 2004). A showing by either direct or circumstantial evidence that age motivated an employer's adverse employment decision need not establish that the employee's age

4

was the sole motivating factor; the plaintiff must only show that his age was a motivating factor in the adverse decision. Id.(citing Hill, 354 F.3d at 284). In a "mixed-motive" case, it is sufficient that the plaintiff-employee show that his employer was motivated to take an adverse employment action by both forbidden and permissible reasons. Id. In order for comments regarding age to be indicative of discrimination, they must not be isolated, and they must be related to the employment decision in question. Id. (citing cases).

Plaintiff contends that Defendant Pond's statements that Plaintiff was "old enough to retire" and was "old enough and could start drawing Social Security" intimate that, because of Plaintiff's age, Defendant Pond felt more comfortable about his decision to discharge Plaintiff rather than insisting that Plaintiff and Defendant Varnadore work out their differences. As the Magistrate Judge properly noted, Defendant Pond had decided he had no choice but to terminate Plaintiff because "one of them had to go" and terminating Defendant Varnadore was not an option because she was taking over the business. (Entry 17, Exhibit B, Deposition of Joseph Pond, pp. 31-32.) Plaintiff himself testified that Defendant Ponds did not want to terminate him, "[b]ecause, when he did, he had tears in his eyes." Westmoreland Depo., p. 36. Plaintiff also acknowledged that Defendant Varnadore wanted him discharged because he "chose sides" and she could no longer work with him. Id.

Taken in context, the statements in themselves create no inference of age discrimination. See Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 512 (4th Cir. 1994) (finding that statement "there comes a time when we have to make way for younger people" reflects merely a fact of life and noting that "statements about age may well not carry the same animus as those about race or gender . . . [because] everyone will enter the protected age group at some point in their lives."). Both Plaintiff and Defendant Pond were in the protected age group; accordingly, Defendant Pond's remark

"should be seen for the non-actionable reflection on generational passage that it was." Id. Furthermore, considering the record as a whole and the fact that prior to the February 11, 2004 incident Plaintiff had been treated well and that it was Plaintiff's disagreement with Defendant Varnadore that precipitated his dismissal, the court concludes that Plaintiff's objections are without merit.

B.     Breach of Contract

Plaintiff contends that the Magistrate Judge erroneously concluded that, as a matter of law, Plaintiff could not prevail on his claim that his employee handbook altered his at-will employment. The court disagrees.

The doctrine of termination at will is the law in South Carolina. Ludwick v. This Minute of Carolina, Inc., 337 S.E.2d 213, 216 (S.C. 1985). The employment at will doctrine allows an employer to discharge an employee at any time, for any reason or no reason at all, without incurring liability. Id. at 214. An individual working for an employer under a contract of employment for an indefinite period can be terminated at will. Williams v. Riedman, 529 S.E.2d 28, 32 (S.C. Ct. App. 2000) (citing Shealy v. Fowler, 188 S.E. 499 (S.C. 1936)). Termination of an at-will employee does not normally give rise to a cause of action for breach of contract. Id. (citing Hudson v. Zenith Engraving Co., 259 S.E.2d 812 (S.C. 1979)). However, when the at-will status of the employee is altered by the terms of an employee handbook, thereby creating a contractual employment relationship, a cause of action for wrongful discharge may arise. Id. (citing Small v. Springs Industries, Inc., 357 S.E.2d 452 (S.C. 1987)).[1]

---

[1] The South Carolina Legislature recently passed a statute providing that employee handbooks issued after June 30, 2004 will not create an express or implied contract of employment if the handbook contains a conspicuous disclaimer, and the disclaimer is signed by the employee. S.C. Code Ann.

6

The gravamen of a breach of handbook action is that an employer may alter the at-will relationship through written handbooks and oral assurances that limit the employer's ability to discharge its employees "for any reason or no reason." See Small v. Springs Industries, Inc., 357 S.E.2d 452, 454 (S.C. 1987). A progressive disciplinary policy can alter the at-will employment status because such procedures typically provide that an employee may be fired only after certain steps are taken. Hessenthaler v. Tri-County Sister Help, Inc., 616 S.E.2 694, 698 (S.C. 2005).

An employer may issue policies, manuals, or bulletins as purely advisory statements and may evince a desire to continue under the employment at will policy. An employer may accomplish this goal by inserting a conspicuous disclaimer or provision into the written document. Jones v. General Elec. Co., 503 S.E.2d 173, 178 (S.C. Ct. App. 1999) (quoting Small v. Springs Industries, Inc., 357 S.E.2d 452 , 454-55 (S.C. 1987)). A disclaimer is conspicuous when there is something about the provision that reasonably calls attention to it. Id. at 180 (quoting Hannah v. United Refrigerator Svcs., Inc., 430 S.E.2d 539 (S.C. Ct. App. 1993)).

The handbook at issue does not contain a progressive disciplinary policy. Instead, Plaintiff relies on AB Beverage's no harassment policy, which provides in pertinent part that "no . . . member of management has the authority to suggest to any employee that that individual's employment, continued employment, or future advancement will be affected in any way by the individual's entering into (or refusing to enter int) any form of personal relationship with a manager or member of management," and that employees "will not be penalized in any way for reporting a harassment problem."

---

§ 41-1-110. Section 41-1-110 was not effective until after Plaintiffs were discharged.

Even assuming that the cited language constitutes a promise enforceable in contract with respect to claims of harassment, Plaintiff cannot prevail. As the Magistrate Judge properly noted, the handbook contained an acknowledgment form that was required to be signed by every employee. By signing the acknowledgment, the employee signaled that he understood the handbook did not create a contract of employment and that his status as an "at-will" employee could not be changed except by written agreement signed by the president of AB Beverage. Plaintiff argues that there is no evidence that Plaintiff ever signed the acknowledgment form; further, he contends that the acknowledgment was not "conspicuous" within the meaning of South Carolina law. However, it is uncontroverted that Plaintiff possessed actual knowledge regarding the language specifically providing that the handbook does not change the at-will employment relationship. Plaintiff was responsible for obtaining signatures on the acknowledgment form from new employees and ensuring that they understood the handbook did not alter their at-will status with AB Beverage. Plaintiff cannot now credibly argue that the employee handbook constitute a contract of employment. See Horton v. Darby Elec. Co., 599 S.E.2d 456, 460-61 (S.C. 2004) (noting that employee with responsibility for interpreting handbook stated he interpreted the manual as not limiting his ability to terminate employees). Plaintiff's objections are without merit.

C.     Breach of Contract Accompanied by a Fraudulent Act

As the Magistrate Judge correctly noted, Plaintiff cannot maintain a cause of action for breach of contract accompanied by a fraudulent act in the absence of a contract. See Armstrong v. Collins, 621 S.E.2d 368, 377 (S.C. Ct. App. 2005) ("Having a contract is a prerequisite to proving breach of contract accompanied by a fraudulent act.") For the reasons stated hereinabove, the

8

employee handbook did not create a contract of employment because Plaintiff had actual knowledge regarding his at-will status. Plaintiff's objections are without merit.

D.     Intentional Infliction of Emotional Distress

Plaintiff next asserts that the Magistrate Judge erred in recommending dismissal of his cause of action for intentional infliction of emotional distress. The court disagrees.

In order to recover for intentional infliction of emotional distress, Plaintiff must establish that: (1) Defendant Varnadore intentionally or recklessly inflicted severe emotional distress, or was certain, or substantially certain, that such distress would result from her conduct; (2) the conduct was so extreme and outrageous so as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community; (3) the actions of Defendant Varnadore caused Plaintiff's emotional distress; and (4) the emotional distress suffered by Plaintiff was severe such that no reasonable man could be expected to endure it. See Hanson v. Scalise Builders of South Carolina, 2007 WL 2301196, *2 (S.C. August 13, 2007) (quoting Ford v. Hutson, 276 S.E.2d 776, 778 (S.C. 1981)). In order to prevent claims for intentional infliction of emotional distress from becoming " panacea for wounded feelings rather than reprehensible conduct," Todd v. S.C. Farm Bureau Mut. Ins. Co., 321 S.E.2d 602, 611 (S.C. Ct. App. 1984), the court plays a significant gatekeeping role in analyzing a defendant's motion for summary judgment, Hanson, 2007 WL 2301196 at *2. Under South Carolina law, a plaintiff must establish a prima facie case as to each element of a claim for intentional infliction of emotional distress in order to survive a motion for summary judgment. Id. at *3.

Plaintiff contends that a physical attack in the employment setting constitutes extreme and outrageous conduct, particularly when Defendant Varnadore knew of Plaintiff's pre-existing heart

9

problem, and taking into consideration their close friendship of many years. Even assuming for purposes of summary judgment that Defendant Varnadore's conduct constituted extreme and outrageous behavior, Plaintiff has presented no evidence of severe emotional distress. Plaintiff's anxiety and sleeplessness have been recognized by courts as "fairly ordinary symptoms," Hansson, 2007 WL 2301196 at *4. The court concludes that Plaintiff has failed to demonstrate that his resulting emotional distress was "severe" within the contemplation of South Carolina jurisprudence. See id. Since Plaintiff has failed to meet each element of the tort of outrage, Plaintiff cannot prevail on this claim as a matter if law. Plaintiff's objections to the contrary are without merit.

E.      Wrongful Discharge

Although Plaintiff states that he objects to the Magistrate Judge's determination that the wrongful discharge claim lacks merit, he fails to address any perceived errors in the Magistrate Judge's Report and Recommendation regarding this cause of action. In the absence of objections to the Report, this court is not required to give any explanation for adopting the recommendation. Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

F.      Negligent Supervision

Plaintiff finally contends that the Magistrate Judge erroneously concluded that there was insufficient evidence to support Plaintiff's negligent supervision claim. The court disagrees.

An employer may be liable for negligent supervision if the employee intentionally harms another when he: (1) is upon the premises in possession of the employer, and (2) the employer (a) knows or has reason to know that he has the ability to control his employee, and (b) knows or should know of the necessity and opportunity for exercising such control. Degenhart v. Knights of

Columbus, 420 S.E.2d 495, 496 (S.C. 1992). In this case, the first element is met because the alleged attack took place on the premises of AB Beverage in Aiken.

As the Magistrate Judge properly found, however, there is no foundation in the record to support a finding that Defendant AB Beverage knew or had reason to know that Defendant Varnadore would engage in violence or physically abusive activity over which the company should exercise control. Although there is evidence that Defendant Varnadore may have been verbally confrontational and combative, she and Plaintiff had been friends for many years and she never had been involved with violent disagreements with him or with any other employee. Plaintiff's objections are without merit.

### III. CONCLUSION

For the reasons stated, the court adopts the Report and Recommendation of the Magistrate Judge and incorporates it herein by reference. Defendant's motion for summary judgment (Entry 17) is granted except as to Plaintiff's state law claims for assault and battery. As to those claims, summary judgment is denied. Plaintiff's claims for assault and battery will be scheduled for trial at the next Aiken term of court.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
United States District Judge

Columbia, South Carolina

September 19, 2007.